P.D 0034-15 / COA 05-12-01537
Trial Ct No. F11-27465-W

MARK Lynn Milligan            §    In the Texas Court of
          V.          ORIGINAL    §    Criminal Appeals
The State of Texas            §

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 12 2015

Abel Acosta, Clerk

## Petition for Discretionary Review

To the Honorable Court of Criminal Appeals of Texas:

Comes Now, Mark Milligan, Appellant, and Respectfully submits this Petition Urging error from a conviction for the offense of Murder.

### Statement of the Case

A jury convicted Appellant of murder, found that he acted under the Immediate influence of sudden passion arising from Adequate cause, And Assessed punishment At fifteen years imprisonment and a $5000.00 fine. In A single issue on Appeal, Appellant Asserts the trial court erred in denying his motion to suppress because the police failed to obtain A search warrent prior to having GPS function of cell phone searched to determine his location. The 5th court of Appeals Affirmed the trial courts judgement in error of the facts and law.

### Issue Presented

The trial court Abused its descretion in denying Milligan's motion to Suppress evidence when the facts show, and the state Agrees, that police failed to obtian A search warrent prior to "pinging" (using GPS interggated circuit to connect to satellite) to determine his location. This was not A use of cell phone towers to "triangulate", which is only accurate to within A mile, or 100 meters. Using the cell phone G.P.S. function allow an Accuracy of within 100 feet.

FILED IN
COURT OF CRIMINAL APPEALS

MAR 12 2015

Abel Acosta, Clerk

I.

## Back Ground

On 10-29-15 Defendant was assaulted by Patrick Ames, a prosecution witness, while dropping off his son and youngest daughter to his wife. Apellate was inside of his company vehicle to check the status of vehicle in Kim's care, that was to be serviced. Appellate was able to get away, and in concern for that exposure to his children to family violence left the scene. Later, Appellate was informed by Kim Jenkins, his wife, that they had called police and that if he did not give her money he would be placed in jail as they had said "He assaulted her". Appellate Refused, Kim had stolen drugs from his Customer's young son, Jennifer Machado who owed Appellate $20,000⁰⁰ for Remoldling her home, on Tiehack In Garland TX, The wrong address for Appellate on the indictment. Appellate had also asked Kim to turn in her cell phone that was property of Air Energy Experts, Appellate's company, she threatened Appellate and refused.

The apartment at 4355 Point Blud was originally leased to Cynthia Wiedeman, Appellate's sister in law, who moved out on September 10th 2011 after signing a 6 month lease extention in which management knew Appellate would be living there with his 3 children; during which time, he would be rehabitating the Tiehack Location. Appellate's oldest two children: Kaylynn Milligan 9, and Mark Milligan Jr 8 were enrolled in the Garland I.S.D. which required Appellate and the lease holder to have a "Proof of Residency" form signed and notarized by both. Furthermore, they were enrolled on the bus line to and from school from this location, until the day this incident occured; At which time, Appellate admitted culpability to defending his home, children, and property; After being informed by dectectives that descendant was known to police as a "Sgt of Arms For the Mexican Drug Cartel, ZETA's" As Kim was the only other caretaker for his children there was only one way to see to their welfare, admit it.

After having cell phone located, Appellate was arrested in Denton County. He was located by Denton County Sheriff and a Little Elm Police officer

II.

Who at the same time (Exhibit A) as a result of "an updated Bolo on on the murder suspect stating his cell phone ping was showing the suspect's location at FM 1385 and Hwy 380. This was a Denton County dispatch that put out the updated BOLO at 0330 hrs after recieving the information from Garland PD whom later showed up and took possession of subject along with his vehicle. Appellate had N.C. Diver's license; therefore, Garland would wait till arrest warrant was issued. A Domestic Violence Charge would allow for a warrentless arrest so it was invented, TCCP 14.06 to make the arrest legal. This charge was later dismissed, no punishment, it NEVER took place. Any evidence submitted at trial was fabricated by state and was false (EXTRANEOUS?) evidence, as testimony confirmed. The jury was lied (EXIGENT) to about this extraneous charge. The police lied to defend the extingent circumstance exception to (WARRANT) a warrant. Only, Lt Roten, who never verified the facts at the scene, took what he wanted to allow himself to avoid the warrent requirement, which is not supported by the record nor the physical evidence.

The physical evidence submitted during the trial would show how the state fabricated a case from the start with the reconstructed photo of victim in a Zoro mask and Kitty cat covering his identity, he was an "animal lover" they said. Kimberly, took the stand and committed at least 9 counts of perjury between the limine hearing and trial. She admitted she was there, she had handled the gun, her hand was bleeding, and her blood was on the gun when it was found. None of the 5 blood swabs matched her, I, nor the victim. The bloody towel never had a DNA match. Oddly, my DNA was not found anywhere, nor anyplace. The bruising on Kim's photo were manufactured or "photoshopped". The autopsy investigative narritive (States (Exhibit 6b) was made to fit the charge of burglary as it states the deceased "died at his home." (signed by all 9 medical Examiners).

III

Kimberly Jenkins told Lt. Roten the shooter was her estranged husband and that she was afraid of him. Jenkins told him that she had tried to get away from Appellant by moving around from North Carolina but he followed her there Then back to Dallas etc. Then she explained LYING that he was on his way to kill her sister and children. She didn't tell the Lt. Roten that Appellant lived at that apartment. She didn't tell him that she had handled the gun. She didn't tell him that she was drunk. She did not tell him that they had made an pornographic picture to give Appellant apparent motive to act with violence. She did not tell them she had stolen drugs, money, and other property from Appellant. She did not tell Lt Roten about her attempt to extort money from Appellant She did not tell Roten that every item in the apartment was the property of Appellant, and that they had broken into his home to lay in wait for Appellant. She did have every bit of identifying information down to his License plate tag number, and criminal history from 30 year previous to this incident. She did say Appellant had sent threatening text messages, but had none to show; Nor, were there any found after AT&T complied with a search warrant. The facts were, actually, she had always followed Appellant as his career path lead him and his children around the Country. In fact, Appellant was her Sole means of support for the previous 12 years. Also, there were 6 months of photos on Appellate's phone that would be evidence, as well a lease records. So, all the future activity of the police on the case, came from faulty information. Jenkins even let the D.A.'s know of her willingness to lie to protect herself. Roten failed to check any of her claims even after he knew her to have been drinking liquor all day. IV.

Appellant was located by the use of the GPS function of his cell phone; not by his cell phone call records. That Appellate had used his cell phone was not how he was found. Lt. Roten could have called Appellate at anytime on his cell phone. Exhibit A shows a memo which says that Little Elm and Denton County found suspect from an updated bolo w/ the ping location, they were searching together and had the same information and pulled behind the suspects vehicle together. The court and state did not stipulate any different facts as the Appellate court has done.

Appellate moved the court to suppress; the gun, and any statements and evidence recieved from this illegal search; including the picture of Jenkins having a penis pressed to her lips.

## ANALYSIS

In this sole issue on appeal, Appellant challenges the States warrantless search of his cell phone. He cliams there was not ever a state of emergency which would give rise to the violation of his right to privacy of location. There was never a danger to his children nor sister-in-law, That the police had served their caretaker responsibilities when they had went to the Millmar address that was minutes away from the scene. That if Appellate had gone from the scene, to that address, he'd have been there already by the time of requested ping information between 1:20 and 2:00 am. And, that the sister in law had talked to Appellate. At no time, by her testimony, did she share her drunk sister's fear. In fact she had told Roten that Appellate lived at the residence or apartment of the scene of shooting. This was not some random act of violence, nor mayhem. Appellate was in fact unarmed.

V.

The Appellate court Rulies on Valtierra v. State 310 S.W.3d. 442 (Tx Crim App 2010) to state. they Review a trial courts ruling on a motion to suppress under a bifurcated standard. The trial court did find that this was a search. That (Appellate) was found from the ping info. The trial Judge found that the police were acting in a care taking function. The Appellate court seems to confuse the use of cell phone tower phone call information with the current technology of getting Real time information from the invasion of the GPS Ic. chip enbedded in the cell phone, as a tracking device.

## Standard of Review and Authorities

The Appellate court Reviews a trial court's ruling on a motion to Suppress evidence for Abuse of discretion. Crain v. State, 315 S.W.3d. 43, 48 (Tex Crim App 2010). A trial court Abuses its discretion when its ruling is Arbitary or Unreasonable. State v. Mechler, 153 Sw.3d 435, 439 (Tex. Crim. App 2005). The trial court's record Ruling on the motion to suppress will be Affirmed if it is Reasonably supported by the Record and is correct under any theory of law applicable to the case. Young v. State 283 S.W. 3d 854, 873 (Tex Crim App 2009)

In Reviewing a trial court's ruling on a motion to Suppress, the appellate court applies a bifurcated standard of Review. Wilson v. State, 311 SW3d 323, 327 (Tex Crim App 2010). Although the Appellate court gives Almost total deference to the trial courts determination of historical facts, the Appellate court conducts a de Novo Review of the trial court's Application of the law to those facts. Wilson, 311 SW 3d @458; Carmouche, 10 SW 3d @327. The Appellate court Affords Almost total deference to the trial judge's Rulings on mixed questions of law and fact when the Resolution of those questions depends on an evaluation of the credibility and demeanor of witnesses. State v Johnson, 336 S.W 3d 649, 657 (Tex Crim App 2011); Guzman v. State, 955 SW.2d 85, 89 (Tex Crim App 1997). The Appellate court conducts a de Novo review of questions of law and fact that do not depend on an evaluation of credibility and demeanor. Johnston, 336 S.W. 3d At 657; Guzman, 955 SW 2d At 89. All purely legal questions are Reviewed de Novo. Johnston 336 S.W.3 @ 657; Kothe v. State 152 S.W. 3d 54, 62-63 (Tex. Crim. App. 2004).

VI.

## Other Authorities

The Fourth Amendment to the U.S. Constitution AND Article 1, Section 9 of the Texas Constitution protects individuals against unreasonable searches AND siezures. See U.S Const. Amend IV; Tex Const Art 1§9; T.C.C.P. Art 38.23 Evidence obtianed in violation of the law is subject to suppression; Mincey V. Arizona, 437 U.S. 385, 98 S.Ct 2408, 57 L. Ed 2d 290 (1978); Luna V. State 268 S.W. 3d 594, 603 (Tex Crim App 2008). Wehrenberg V. State, 416 SW 3d 458 (Tex Crim App 2013).

In U.S. v. Jones, 565 US __, 132 S.Ct 945; 181 L. Ed 2d 911 (2012), the Court stated:

"The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, AND effects, against unreasonable searches AND seizures, shall not be violated." It is beyond dispute that a vehicle is an "effect" as that term is used in the Amendment. U.S. V Chadwick, 433 US. 1, 12, 97 S.ct. 2476, 53 L.Ed. 2d 538 (1977)." 132 S.Ct. at 949. The Court held that attaching a GPS tracking device to a car and using the information provided by the tracking device amounted to a <u>search in violation of the forth Amendment.</u>

In <u>Granville V. State,</u> No. PD-1095-12, 2140 Tex. Crim. App. LEXIS 237, (Tex. Crim App. February 26, 2014) (Not yet published)(motion for rehg. filed), Granville's cell was taken AND stored with his property at the jail when he was arrested. Slip Op 2. ... The trial court granted Granville's motion to suppress finding that Granville had a subjective, reasonable AND legitimate expectation of privacy in his cell phone even while in his jail property Id 4-5

The state appealed Id @ 5. The Court of Appeals affirmed the trial court's decision "finding that (1) a person has a general, reasonable expectation of privacy in the data contained in or accessible by his cell, now 'smart' phone; AND (2) a person continues to have a reasonable expectation of privacy in the contents of his cell phone even though it has been placed in a jail property room for safe keeping." Id 5-6.

The Court of Criminal Appeals granted the State Prosecuting Attorney's Petition for Review but affirmed the Court of Appeals. Judge Cochran noted:

"Our most private info is now frequently stored in electronic devices such as computers, laptops, ipads, AND accessible by those electronic devices. But the "Central Concern underlying the Forieth Amendment" has remained the same throughout the centuries; It is "the concern about giving police officers unbridled discretion to rumage at will among a persons private affects." This is a case about rummaging through a citizens electronic private effects - a cell phone - without a warrent.

VII

Some courts have applied ARIZONA V. GANT, 556 U.S. 332, 129 S. Ct. 1710, 173 L.Ed. 2d 485 (2009), to find that "the search-incident-to-arrest exception does not authorize the warrantless search of data on a cell phone seized from an arrestee's person, because the government has not convinced us that such a search is ever necessary to protect arresting officers or preserve destructible evidence." Slip op. At 20 n. 55 (quoting U.S. V. WURIE, 728 F.3d 1, 3 (1st Cir 2013), cert granted, 82 USLW 3104 (U.S. Jan 17, 2014)(NO 13-212). The court noted that the officer could have searched the outside of the phone and tested for DNA of fingerprints because portions of the phones were routinely exposed to the public. Slip @ 24.

Judge Cochran concluded:

Given modern technology and the incredible amount of personal information stored and accessible on a cell phone, we hold that a citizen does not lose his reasonable expectation of privacy in the contents of his cell phone merely because that cell phone is being stored in a jail property room. Officer Harrell could have seized Appellant's cell phone and held it while he sought a search warrant, but, even with probable cause, he could not "activate and search the contents of an inventoried cellular phone" without one.

Slip op At 26.

The United States Supreme Court and the Court of Criminal Appeals have recognized that in very limited situations, an immediate search without a warrant is reasonable because of a risk of injury or death, a risk that would likely be magnified if the search was delayed due to the time involved in obtaining a warrant. See MINCEY V. ARIZONA, 437 U.S. 385, 98 SCt. 2408, 57 L.Ed. 2d 290 (1978); BRIMAGE V. STATE, 918 SW.2d 466, 500-501 (Tex Crim App 1996); BRAY V. STATE 634 SW 2d 687 (Tex Crim App 1982). This is know as The Emergency Doctrine or the Exigent Circumstances Doctrine. BRIMAGE, 918 S.W.2d At 500. The lawfulness of an emergency search terminates once the emergency ends. BRAY V. STATE, 597 SW 2d @ 764.

The U.S. Supreme Court and the Court of Criminal Appeals have also recognized the community caretaking exception to the requirement for a warrant. CADY V DOMBROWSKI (13) U.S. 433, 93 S. Ct 2523, 37 L.Ed. 2d 706 (1973); WRIGHT V. STATE 7 SW 3d 148, 152 (Tex Crim App. 1999) In WRIGHT, the Court of Criminal Appeals determined that the community caretaking exception

EXCEPTION

VIII

has a narrow applicability, stating "only in the most unusual circumstances will warrantless searches of private, fixed property, or stops of persons located thereon, be justified under the community caretaking function, given the greater expectation of privacy inherent with respect to residences and other private real property." Wright, 7 SW 3d @ 153.

As part of his duty to "serve and protect," (community caretaking) an officer may stop and assist an individual whom a reasonable person - given the totality of the circumstances - would believe is in need of help. Id @ 151. In determining whether an officer acted reasonably in stopping an individual to determine if he needs assistance, these factors are relevant to said determination: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer, and (4) to what extent the individual - if not assisted - presented a danger to himself or others." Id @ 151-152.

In Laney v. State, 117 SW 3d 854 (Tex. Crim. App. 2003) the Court of Criminal Appeals discussed the difference between the emergency doctrine and the community caretaking doctrine. The Court wrote:

The emergency doctrine is not the same as the community caretaking doctrine established in Cady. The distinction between the emergency doctrine and the community caretaking doctrine, hereinafter referred to as the Cady doctrine, is a narrow, but critical one. Under the emergency doctrine, the officer has an immediate, reasonable belief that he or she must act to "protect or preserve life or avoid serious injury." Mincey, 437 U.S. @ 392. On the other hand, under the Cady doctrine the officer "might or might not believe there is a difficulty requiring his general assistance." Ngumann, supra @ 333; see Cady 413 US 437. Therefore, while both doctrines are based on an officers reasonable belief in the need to act pursuant to his or her "community caretaking functions," the emergency doctrine is limited to the functions of protecting or preserving life or avoiding serious injury.

Id. at 861. To determine whether a warrantless search is justified under the emergency doctrine, the appellate court uses an objective standard of reasonableness. Brimage, 918 S.W.2d @ 501. This standard looks at the officer's conduct and

IX

considers the facts and circumstances __known__ to the officer at the time of the search Id. The appellate court also reviews whether the search is strictly circumscribed by the exigencies justifying its initiation. Mincy, 437 U.S. at 393; Bass v. State, 732 SW2d 632, 635 (Tex Crim App 1987). The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable Cady, 413 US at 447.

## Relevant Testimony from the Suppression Hearing

Around 1:20 am Garland Police, Lt. Roten, arrived at the scene; Milligan was not present and they had no idea where he was. (RR-2:9-10) Roten issued a BOLO which described Milligan's car as a 1996 Chevrolet Suburban with North Carolina plates, with a large decal on the sides from his A/C company he owned (RR-2:20) Upon Jenkins informing them of his cell phone number and the cell phone provider, along with the above, Roten requested that dispatch contact T-mobile to request a ping on Milligan's cell phone to get his location. (RR-5:89, 11-12). Roten decided to ping the phone after Jenkins told the other officer __she believed__ Milligan was going to Wiedeman's house to murder them. (RR-2:19-20). Roten had already sent officers to that residence. (RR-2:20) Roten wanted to determine where Milligan was because he feared for the potential victims and the officers. (RR-2:20, 29-30). He was not located near that location which was 10 minutes away from the scene.

Two hours later, around 3:30 am, T-mobile responded that the phone was at 27735 Hwy 380 East in Aubrey in Denton County, 70 miles north of scene. (RR-2:13) Denton County along with a Little Elm Police Officer had found Milligan's 2001 Suburban; and arrested him (RR-2:13-14)

Roten did __not__ have, or request, a search warrant to ping the phone. (RR-2:16).

X

Milligan Did Not volunteer his location to Anyone (RR 2:16).

Roten learned of the Arrest At 4 Am (RR-2:22)

After Reviewing Reports From Denton County officers, Roten believed they were searching for the Suburban As a result of the Updated BOLO which included the ping location information (RR-2:25-26)

Detective Tooke Interviewed Milligan At the Garland Jail, And took his cell phone w/ the picture of Jenkins giving A blow job to deceased, in A text message (RR-2:31). Milligan took officers where the gun was (RR-2:31-32). Milligan said officers must have located him by triangulating his cell phone (RR-2:44).

The trial Court Reviewed the extensive documentation provided in support of the motion to suppress. (CR-MTS:4-4/13; RR-2:48). The trial Court indicated that the issue was troubling (RR-2:49). The trial Court denied the motion to suppress finding that the ping was reasonable because the officers were Acting in a community Caretaking capacity under what they believed were exitengent circumstances; BASED ON MISINFORMATION PROVIDED TO THE OFFICER(S).

## Application to the Instant Case

The Request For A ping by Roten Amounted to A Search of Milligan's cell phone, As was Detective Tooke's At Garland Police Station, which contained his "Private effects." See Granville v. State, slip op. At 6-7) Thus, A warrant was Required.

Shortly After Arriving At the Scene, Roten issued a BOLO for Milligan which included A description of the Suburban (RR-2:9-10,14,20). Roten had Already issued A dispatch to Officers to Wiedeman's, nearby, to protect them. (RR:19-20) The Suburban was a billboard, easily identifyable. Had the Suburban been in the Area the police would have seen it, And stopped it. After All the Suburban was found, 70 miles Away, in "Plain View" in Denton County, No Attempt to change its Appearance; to Avoid detection. They could have called Milligan, @ cell number.

XI

The facts known to Roten at the time he requested the ping of Milligan's cell phone did not amount to exigent circumstances. Roten did not interview ~~the~~ Jenkins, but "stood by" while another officer did (RR-2:144) Roten made no effort to determine the veracity or reasonableness of the intoxicated Jenkin's assertion that Milligan was going to kill everyone at Wiedeman's. Roten made no effort to call Cynthia to determine her welfare prior to requesting the ping. Roten had already requested that Dallas Police respond to the home and had sent Garland and Mesquite officers to the area to search for Milligan, thereby assuring protection for Cynthia and his family (RR-2:145). Roten admitted the ping was only requested in a "life in danger" situation (RR-2:146).[2] They had been told the gun was fired until empty.

Further, it was apparent that this was a crime of passion in that Milligan had came home to his long-time girlfriend with a stranger after recieving a text message of him getting his penis sucked by her. Kim had all the other information on Milligan, his number, cell phone provider, type and make vehicle, It's license information, his criminal record, his dress, make and model of gun, and that it would soon be her birthday. It was only speculation on Jenkins' part that there was ever an intention to further violence. She was drunk, hysterical, in shock and jabbering. She'd said Milligan was "Mark Logan", etc. During her testimony at trial, Jenkins did not testify that she told Roten she feared Milligan was going to kill their children, nor did she say that she had that fear (RR-4; 140-244; RR-5: 8-36). Roten did not ask Jenkins any questions, nor did he inquire into the veracity nor reasonableness of this belief. (RR2:29,27). Once the officer's arrived at Cynthia's home and discovered no evidence that milligan was nearby, but was headed out of town, that no one was injured, and that Milligan had spoken to Cynthia and Ames by phone, it was obvious that Milligan had no intention of coming to the home. Milligan was intent on making sure Cynthia and Ames would care for his children in his absence (RR-5:67, 103).

Once officers learned this information, and had decided to leave, it was clear there was no danger to the household and there were no exigent circumstances

XII.

the emergency had ended. There were no exigent circumstances that Milligan be immediately located. The fact was there had never been such an emergency Milligan had no weapon. See Bray, 597 S.W. 2d at 764.

Furthermore, it took T-mobile over two hours to search the cell phone for the GPS information (3:30 Am) (RR-2 9-10,12). The Little Elm officers did not recieve the updated BOLO with the cell phone's location until 3:30 Am (CR-MTS:14). In that time it was apparent he was no where near Cynthia's location. He had been to Tiehack Lane 20-30 minutes north of that location. In fact by the time Ames arrived home and spoke to Milligan by phone (2:00 Am) the officer's were leaving. (RR-5:101-102) 2 hours before the ping. No evidence was presented that Roten could have obtained a search warrent within this two hour time frame. BUT REFUSED TO DO SO. Roten had satisfied his Community caretaking duties by sending officers to the home at 1:20 am. NONE of the factors enumerated in Wright to determine the reasonableness of Roten's acts necessitated Roten requesting the ping on Milligans phone. Roten's actions were not justified by any "exigency" of the possible threat to Cynthia and the children. Neither the community caretaking exception, as characterized by the trial court, or the emergency doctrine exception are applicable.

While this case is different from U.S. v. Jones, in that a tracking device was not placed on the Suburban by law Enforcement Officers. That the cell phone is embedded in all cell phones pursuant to the Stored Communication Act, 18 USCA §2702(c)(4). The fact that he had his cell phone on him, as most everyone does now, in the Suburban is similar to an actual tracking device be placed on the Suburban. All current cell phone must have this tracking device in them. To distinguish this case from Jones would allow law Enforcement to circumvent the forth Amendment and to track cell phones vs placing cell tracking devices on vehicals. As in Carmouche v. State, 10 s.w.d 323 All most all police stops have the potential for violence, or in Wehremburg 416 s.w. 3d 458, drug manufactoring has deadly potential for explosions and fire. Milligan had a reasonable expectation of privacy

XIII

In his cell phone which was on his person in his vehicle at the time it was be monitored for its location and movement. A ping required T-Mobile to "invade" the contents of the cell phone to monitor its location. Furthermore officers had other means that determined Milligan was not at or near Cynthia's residence. They had searched the area for two hours, it was a to ten minute drive from Appellant's his Residence, or "Crime scene". Such actions negated the search of Milligan's cell phone to determine if he were at or near Weideman's home with any intent which was Roten's explanation for not getting a warrant to search Milligan's cell phone.

The officer's community caretaking function and/or emergency circumstances were non existant at the time ping was requested. In fact, it was satisfied at having officer's go to Wiedeman's house. Thus, the trial court abused its discretion in finding that the ping of Milligan's cell phone was not a search necessatating a warrant. The trial court should have suppressed the cell phone contents, the blowjob picture, the gun, and all statements made by Appellate. As well as any other evidence derived at "but/for" the illegal search. The court found the to be factually arrived at by the search.

## Prayer

Wherefore, premises considered, Appellate pray that the Court finds that all evidence derived at by the search should be suppressed. That the case be sent to the Fifth Court of Appeals to reconsider in accordance with this ruling suppressing the illegally obtained evidence. To reverse it's decision and remand for a new trial.

IXV XIV

Respectfully Submitted

Mark Milligan
_____
MARK MILLIGAN, Pro Se
#1883403
6999 Retrieve Rd
Angleton TX. 77515

## Certificate of Service

I hereby certify that a copy of the forgoing brief has been served on Criag Watkins Dallas County Criminal District Attorney 133 N. Riverfront Blvd., LB-19 Dallas TX 75207-4399 on ~~February 10, 2015~~ MARCH 5, 2015

Mark Milligan
_____
MARK MILLIGAN. Pro Se

NOTE:

Appellate has __NOT__ had access to the Trial RECORD, FINDINGS, EXHIBITS, NOR TRANSCRIPTS. Appellate has Filed his second request with the trial Court, And a Writ of MANDAMUS w/COA to have Access to these transcripts As is Instructed In the Texas Practice + Remedies Code §13.003 Filed to the Texas Fifith Court of Appeals Dallas TX.

X Mark Milligan
_____
Appellate, Pro Se

XV



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01537-CR

### MARK LYNN MILLIGAN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-27465-W**

# OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice FitzGerald

A jury convicted appellant of murder, found that he acted under the immediate influence of sudden passion arising from an adequate cause, and assessed punishment at fifteen years' imprisonment and a $5,000 fine. In a single issue on appeal, appellant asserts the trial court erred in denying his motion to suppress because the police failed to obtain a search warrant prior to "pinging" his cell phone to determine his location. We affirm the trial court's judgment.

## BACKGROUND

Appellant is the father of three children with Kimberly Jenkins. At the time of this incident, appellant and Jenkins were estranged. Jenkins had been living in an apartment in Garland with her sister, but at the end of October began moving to her niece's house in Dallas. Jenkins's sister was also moving to a new location, so the apartment was semi-vacant.

On October 29, 2011, appellant dropped off the children at the niece's house. Jenkins and appellant argued about the fact that Jenkins had a boyfriend and a physical altercation ensued. Jenkins's nephew came out of the house and began fighting with appellant. Appellant told the nephew that Jenkins was "a cheating bitch," and bit the nephew and stomped on his foot. Jenkins called the police, but appellant was gone by the time the police arrived.

Later that night, Jenkins and Jesus Dominguez went out to celebrate her birthday. Both Jenkins and Dominguez were drinking and "had quite a few." Throughout the evening, Jenkins and appellant exchanged "hateful" texts. Jenkins provided Dominguez with appellant's cell phone number, and Dominguez sent text messages to appellant as well.

Jenkins and Dominguez returned to the sister's apartment where they planned to spend the night. Dominguez took a picture of Jenkins performing oral sex on him and sent the picture to appellant on his cell phone.

Around 1:00 a.m., Jenkins and Dominguez awakened to a loud banging on the door of the apartment. Jenkins described the sound as though someone was trying to kick the door in. When Dominguez got up and answered the door, appellant shot him in the head. Appellant then fired at Jenkins and chased Jenkins through the apartment. When he caught her, appellant put the gun in Jenkins's mouth and fired; the gun did not discharge. Jenkins escaped to a neighbor's apartment and the neighbor called the police.

Lieutenant Shawn Roten of the Garland Police Department testified that on October 30, 2011 at 1:14 a.m., the Garland Police Department received multiple reports about a gunshot disturbance. The first responding officers found Jenkins, who had been assaulted, and Dominguez, who was deceased. Roten arrived shortly thereafter.

Jenkins told Roten the shooter was her estranged husband and she was afraid of him. Jenkins explained that she had tried to get away from appellant by moving to North Carolina, but

he followed her there. Then he followed her back to Dallas. Jenkins expressed concern for the safety of her three children and her sister, who also lived in the area. She was afraid that appellant was going to go to her sister's house and kill her sister and her three children. She gave Roten the address and a description of the vehicle appellant was driving. Roten sent officers to Jenkins's sister's address to check for appellant.

The police did not know where appellant was. Between 1:20 and 2:00 a.m., the police put out a BOLO, or "be on the lookout for" notice to police in the area and provided a description of appellant's vehicle, a 1996 blue Chevrolet Suburban bearing North Carolina plates, the specific license number, and specific information of the vehicle's distinctive company decal. The BOLO was sent to all of North Texas and to Region 1, which is the northwest corner of the state. Having learned appellant's cell phone number and his cell service provider, T-Mobile, Officer Roten also requested a ping on the phone to determine the location of the phone.[1] Roten testified that the ping could be used to triangulate to determine the location of the phone. Roten did not have a search warrant. Roten did not request or receive any contents from appellant's phone.

Between 3:30 and 3:50 a.m., Officer Roten received the location of the phone from T-Mobile and requested dispatch to relay the location information to the Denton County Sheriff's Office. As a result, a deputy drove to the location, the intersection near 27735 Highway 380 East in Aubrey, Texas, in Denton County but did not find appellant. The department also issued an updated BOLO giving this new location. The deputy continued driving west on Highway 380 to check the area and discovered a Little Elm police officer had actually located appellant's vehicle in a parking lot. When Officer Roten was pressed by the defense to agree that the two officers worked together or at least acted after receiving the location information derived from the ping,

---

[1] Under the Stored Communications Act ("SCA"), a provider may disclose customer records without a court order or a warrant in emergency situations. *See* 18 U.S.C.A. § 2702(c)(4) (West Supp. 2014). Neither party references the SCA here.

Officer Roten emphasized that only the Denton County Sheriff's Office received the ping information and dispatched the deputy to the intersection, and that he had no idea what the Little Elm officer was doing in the area other than following up on the original BOLO.

Appellant was arrested, and Roten was notified. Appellant did not make any incriminating statements at the time of his arrest.

Garland Detective Stacy Tooke interviewed appellant after he had been arrested and returned to Garland. Appellant explained that he had made several phone calls, and expressed his belief that he was located by police using a cell phone triangulation technique. Appellant showed Tooke what was on his cell phone—a picture of Jenkins having oral sex with Dominguez. Appellant admitted culpability for his actions and explained why he did what he did. Then, appellant took the officers to a location where they recovered the gun he used in the shooting.

Prior to trial, appellant moved to suppress the gun and the statement he made to the police after his arrest because the "ping" of his cell phone was performed without a search warrant. Following a hearing, the trial court denied the motion. Appellant's statement to the police was not introduced at trial. Therefore, the only evidence at issue is the evidence pertaining to the gun and the gun itself.

## ANALYSIS

In his sole issue on appeal, appellant contends the State's warrantless acquisition of third-party information concerning the location of his cell phone violated the Fourth Amendment prohibition against unreasonable search and seizure. The State responds that appellant had no reasonable expectation of privacy in the third-party data used to determine the location of the cell phone. Alternatively, the State argues a search warrant was not required because there were exigent circumstances or the police were acting in their community caretaking function.

—4—

We review a trial court's ruling on a motion to suppress under a bifurcated standard. We give almost total deference to the trial court's determination of the historical facts and we review de novo the court's application of the law to the facts.[2] Under this standard, the trial court is the sole judge of the credibility of the witnesses and their testimony.[3]

Appellant's complaint relies entirely upon his challenge of the ping process which yielded the location of his cell phone which resulted in appellant's arrest in his vehicle. However, the record does not support his position that appellant was located only as a result of the ping. On the contrary, according to Officer Roten, the ping information was forwarded to the Denton County Sheriff's Office, which then dispatched a deputy to the specific intersection in question. The deputy did not locate appellant's vehicle. It was only when the deputy continued to drive west on Highway 380 that he came across the Little Elm officer who had independently followed up on an earlier BOLO alert and located appellant's vehicle. On this record, as appellant was not located or apprehended because of the ping information, the motion to suppress was properly denied.

Even assuming appellant was arrested because of the ping initiated on his cell phone, we need not engage in an exhaustive constitutional analysis as to whether and to what extent appellant was entitled to a reasonable expectation of privacy in the use of his cell phone under the circumstances presented and whether the ping absent a search warrant violated same. We need only recognize the trial court correctly concluded exigent circumstances excused the lack of a warrant. Exigent circumstances are one of the recognized exceptions to the general rule requiring a search warrant.[4] The exigent circumstances or emergency doctrine allows an

---

[2] *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

[3] *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

[4] *See McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

immediate warrantless search when a police officer has reasonable cause to believe that if the search were delayed to obtain a warrant, serious bodily injury or harm might result.[5] "The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency."[6] We apply an objective standard of reasonableness in determining whether a warrantless search is justified, taking into account the facts and circumstances known to the police at the time of the search.[7]

Roten testified that he observed the deceased in the doorway of the apartment when he arrived on the scene. Roten learned that appellant was Jenkins's estranged spouse and that he left the crime scene in possession of a firearm. Jenkins feared him, and appellant had followed her to North Carolina and then back to Dallas. Jenkins expressed concern for the safety of her sister and for the safety of her own children, and stated that she was afraid that appellant was going to her sister's house to kill them. Roten requested the ping to see if appellant was in the area. Roten said that he knew there was "a man with a gun out there who had already shot and killed a person and had shot at another." He feared for the sister, the children, and the officers he sent to the sister's house for protection.

Appellant argues that Jenkins's sister and her children had adequate police protection and the police could stop appellant if he showed up at the residence; and the ping was not received until a couple of hours after it was requested, well after any exigency had passed. We disagree. We instead look at the facts and circumstances known to the police at the time the ping was requested. The record reflects that the facts and circumstances known to Roten at the time adequately show that emergency access to the location of appellant's cell phone, to assist in

---

[5] *Brimage v. State*, 918 S.W.2d 466, 500–01 (Tex. Crim. App. 1996) (op. on rehearing).

[6] *Mincey v. Arizona*, 437 U.S. 385, 394 (1978).

[7] *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998).

locating appellant and to prevent what the police perceived as imminent danger to other individuals and police, was reasonably justified under the exigency exception.

Finally, even assuming without deciding the use of the ping without a warrant constituted an illegal search, any taint from the use of that data was sufficiently attenuated. The federal exclusionary rule is a deterrent sanction that bars the prosecution from introducing evidence obtained in violation of the Fourth Amendment.[8] The Texas statutory exclusionary rule is broader than the federal exclusionary rule; the Texas rule applies to evidence that is obtained in violation of the federal and state constitutions, United States laws, and Texas laws.[9] The primary purpose of Article 38.23(a) is to deter unlawful actions that violate the rights of criminal suspects in the acquisition of evidence for prosecution.[10]

But if the evidence seized is sufficiently attenuated from the violation of the law, the evidence will not be excluded if the taint from the illegality has dissipated by the time the evidence is acquired.[11] Here, appellant argued that the gun and evidence concerning the gun should be suppressed. Even if the police used appellant's location data to arrest him, there was no allegation of an illegal arrest. Following appellant's arrest, he took the police to the location where the gun was retrieved. This retrieval of the gun was sufficiently attenuated from the use of appellant's cell phone data to locate him as to remove the taint from any illegality.

---

[8] *Davis v. United States*, 131 S. Ct. 2419, 2423 (2011).

[9] *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); *Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010).

[10] *Wilson*, 311 S.W.3d at 459.

[11] *Wehrenberg v. State*, 416 S.W.3d 458, 469 (Tex. Crim. App. 2013).

Under these circumstances, the trial court did not err in denying appellant's motion to suppress. Appellant's sole issue is overruled. The trial court's judgment is affirmed.


/Kerry P. FitzGerald/
Do Not Publish
TEX. R. APP. P. 47
121537F.U05
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK LYNN MILLIGAN, Appellant

No. 05-12-01537-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-27465-W.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered December 30, 2014.